File in case 14-1247, Cameron Holbrook v. Cindi Curtin. Oral argument not to exceed 15 minutes per side, and Matthew Shapiro for the appellant. Thank you, Your Honor. I'd like to reserve four minutes for rebuttal, please. Sure. Matthew Shapiro, Court Appointed Counsel for Petitioner Appellant Cameron Holbrook. AEDPA's one-year statute of limitations is told during the period for appealing a lower court's denial of a state post-conviction motion to a higher state court whether or not the petitioner ultimately ends up filing a timely appeal. That is the conclusion reached by the 3rd, 4th, 5th, 8th, 10th, and 11th circuits. No other circuit has held to the contrary in a published opinion. This court need not overrule SCARBOR in order to join that consensus. SCARBOR held that AEDPA's statute of limitations is not told during the period for seeking reconsideration in a state's highest court, but the period for seeking reconsideration is not a part of the state's ordinary post-conviction process. That process is complete once the state's highest court has disposed of the petitioner's post-conviction motion or denied review. By contrast, a state's post-conviction process is not yet complete during the period for seeking leave to appeal because there is a higher court to appeal to. But if SCARBOR really means what the state says it means, then the decision changed the rules governing the timeliness of federal habeas petitions in this circuit, and it would be unfair to retroactively apply those rules, especially given the confused state of this court's unpublished case law. But I'd like to begin with statutory tolling in the text of 2244d2. 2244d2 says that AEDPA's statute of limitations is told while a state post-conviction motion is pending in state court. The Supreme Court has held that the petition remains pending until the application has achieved final resolution through the state's post-conviction procedures. Well, the state post-conviction process has not reached a final resolution so long as appeal to a higher court remains available. Otherwise, the finality of the state post-conviction process would turn on after-the-fact contingencies. So if the petitioner filed a timely application for leave to appeal, the underlying post-conviction motion would not have achieved a final resolution during the period for seeking leave to appeal on the state's view. On the other hand, if the petitioner does not end up filing an application, a timely application for leave to appeal, that very same post-conviction motion would have achieved a final resolution during that very same period. Do you think there is a dispositive or important distinction between 2244d1 and d2 that depends upon whether it is a direct appeal or a collateral appeal? Yes, Your Honor. So Scarborough makes this kind of expressionist argument comparing the language of 2244d1a, which sets the time for when the ad hoc starts running in 2244d2, which is the tolling provision. No, I think, if anything, the language of 2244d1a supports our reading of 2244d2. Briefly, just why that expressionist argument in Scarborough doesn't work. Expressionist is a canon that applies where you have language in one provision and then you have a portion of that language appearing in another provision of the same statute and the omission of another portion of that language, right? So you'd have a very strong expressionist argument against us in this case if, you know, instead of saying is pending in 2244d2, it said that the state post-conviction process becomes final by the conclusion of appellate review, omitting the phrase or the expiration of the time for seeking such review, which is the other phrase that appears in 2244d1a. That's not what it says. 2244d2 says that you get tolling while the state post-conviction motion is pending, and the Supreme Court has said that it's pending until the decision becomes final. So it makes sense to simply interpret the meaning of is pending in light of ordinary rules of finality, and 2244d1a supplies kind of the ordinary rule of finality for purposes of a statute of limitations, which includes, as the Supreme Court held in Gonzales v. Thaler, the time for seeking leave to appeal when an appeal is not filed. Are you leaving intact the same policy for both regarding not making decisions retroactively based on actual cases? That's exactly right, Your Honor. In both cases, you want to know both the litigant who's actually litigating his post-conviction motion and a court that might be considering the timeliness of his federal habeas petition. You want to know in the moment is Ed Book's clock really running right now, or is it stopped? Is it paused? And on the state's view and the view adopted by the district court, but no other court of appeals, you can't know whether it's running at any given moment. It depends on whether he ends up filing a timely application for leave to appeal to a higher state court. And as you say, this supports EDPA's policy underlying statutes of limitations. Generally, it also supports EDPA's purpose specifically of encouraging proper exhaustion of state post-conviction remedies. And this is another important distinction between this case and Scarborough and the motion for reconsideration period. And probably the easiest way to understand the distinction. So the Supreme Court has held in the O'Sullivan case that to fulfill EDPA's exhaustion requirement to properly exhaust state post-conviction procedures, you must file an application for leave to appeal seeking discretionary review in the state's highest court. If you haven't done that, you're in trouble in terms of procedural default or lack of exhaustion. By contrast, it's equally obvious that you need not file a motion for reconsideration in the state's highest court to properly exhaust. And that just reaffirms that the state post-conviction process has already come to a conclusion and that in the words of Scarborough itself, you need to take some action to resuscitate the post-conviction motion that has already died by conclusion of the state's post-conviction process. Well, if Scarborough is the motion for reconsideration case, am I right? That's correct. Scarborough, yes. I mean, if the motion for reconsideration pending could extend the tolling period, you could file one after another ad infinitum, I gather. You file a motion to reconsider. It's denied. The statute starts running again. Two days later, you file another motion for reconsideration. That tolls it. I mean, you could run it out. That's potentially true, but there's a safeguard because you need to be filing, you know, it needs to be a recognized state motion for reconsideration and come to work with state procedures. Exactly my point. Exactly my point. I'm not trying to. Hold on. I'm not trying to trip you up. That was a lob. Not at all, Your Honor. But I guess the point is, and going back to your question, Judge Strange, about the expressiveness argument and then talking about this notion of resuscitate, there really are two lines of reasoning running through Scarborough. One is the notion that the motion, the underlying post-conviction motion, is dead by the time that the state's highest court has rendered its decision, that you need to take some action to resuscitate it. The other line is this idea of expressiveness burdening the petitioner with the obligation of kind of keeping his post-conviction motion alive throughout the process. And we think, you know, in order to avoid a circuit split, that it's reasonable to focus on the first line of reasoning, which makes a lot of sense, and the second, which frankly doesn't hold much water. And that's especially true because is pending, that phrase would be such an odd way for Congress to burden petitioners. It's a passive phrase. The provision is focused on the relationship between the post-conviction motion and the state's post-conviction process, not the relationship between the post-conviction motion and what the actual petitioner is doing with it. So it just doesn't really make a lot of sense. So it's perfectly reasonable and fair for this court to focus on the one line of reasoning that really mattered in Scarborough and to distinguish the motion for reconsideration period from the application for leave to appeal period. And in fact, that's the very distinction that the Third Circuit drew in Nera V. Frank at page 319 of its opinion. And it focused, as I said, on this fundamental difference between the two periods and the fact that you do need to file an application for leave to appeal in order to properly exhaust, but you need not file a motion for reconsideration in order to fulfill the exhaustion requirement. The other argument that has come up is that Chavez forecloses this reading, the Supreme Court's decision, and that's just not the case. None of the other circuits have adopted the district court's reading in a published opinion of Chavez. And in fact, at least the Third and the Eleventh Circuits have cited Chavez in opinions applying their prior opinions, granting tolling for this very period that we're talking about here. And that makes sense because each time the court in Chavez stated its holding, it referred to the period between the lower court's adverse decision and the filing of a notice of appeal. So the question in Chavez was, when do you get tolling right up to the time when you actually make the filing of your application for leave to appeal? And the answer was in Chavez, well, your filing has to have been timely. If it wasn't timely, you do not get tolling for that entire period. But it didn't say anything about whether you might get tolling for a portion of that period if your filing is ultimately untimely. And there was just no occasion to consider that in Chavez because Chavez needed all but two days of a three-year and one-month delay to count as reasonable under California's system and to give him tolling for that period. Finally, I just want to say that we do raise equitable tolling as an alternative argument. Obviously, the court need not reach equitable tolling if it finds that Mr. Holbrook was entitled to statutory tolling. But at the very least, Scarborough did kind of change the rules about the timeliness of federal habeas petitions. So equitable tolling would be warranted. Thank you. Thank you. Good morning. May it please the Court. Bruce Edwards, Michigan Assistant Attorney General on behalf of the warden. Judge Daughtry, as to the example you gave about you could seek reconsideration of a denial of reconsideration, there's a Michigan court rule that specifically forbids anybody from filing a motion for reconsideration of the denial of a motion for reconsideration. So that couldn't happen. Well, it couldn't happen in Michigan. It might happen somewhere else. I have no idea. It might happen in Ohio. I couldn't comment on that, but I would be surprised if other states didn't have the same rule. Well, there is that distinction between a direct appeal motion and a motion for reconsideration. I think you would grant me that. They are two different birds. They are, but the petitioners are supposed to be acting diligently. And, you know, the statute says that a statute is told when a properly filed application is pending. And Evans v. Chavez says that the statute of limitations is told during the period when a lower court's adverse determination and the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely. That's the language that SCARB were focused on. And Evans v. Chavez, I think, is controlling here in addition to SCARB. I'm a little confused by my opponent's argument. Either SCARB applies or it doesn't. He first tries to distinguish it, but then he tries to dump all over it. It's a published binding case on this panel. So if it can't be distinguished, his arguments as to why it was wrongly decided should be ignored by this court because rehearing is not going to be granted in SCARB. So I don't think there really is a distinction that properly can be made here. SCARB did not act diligently. And the statute wasn't told. SCARB vindicated the district court's opinion. And then just last week I filed a 28-J letter and I pointed out that an unpublished order by a panel of this court  And in that case, the petitioner failed to file an appeal from a denial of a motion for relief from judgment in the trial court. And this court said, well, the SCARB rule applies. You didn't pursue it. The fact that you could have when you sat on your hands, but you didn't pursue it, you don't get the benefit of that period of time. And hearkening back to Chavez. If that's so clear in interpreting these provisions, why would all the other circuits in the country go against the interpretation that you're urging on us? I don't think all the other circuits in the country do. I mean, counsel's original brief in this case said every single panel or every single circuit has ruled this way. And then SCARB came out after that and SCARB cited two other circuits that supported its opinion. So it wasn't a unanimous by any stretch. SCARB cited two other circuits and said we're following them. And then they did disagree with several other circuits and gave reasons why they disagreed with them. And did you look at those two cases to see if they were on point here or whether they involved something like this within a reasonable time situation in California? I mean, that's a whole other bird. And I thought Sharber, in fact, relied on Evans. And Evans, I remember a time in Tennessee when you could file a post-conviction action, motion for relief, post-conviction-wise, any time you wanted to. There was no statute of limitation on one of those things. Well, you can in Michigan as well, but your EDPA time limit might have run out. Well, yeah, but EDPA wasn't in existence when those file within a reasonable time provisions came about. And my guess is that that's the ‑‑ I haven't looked up the history of the California reasonable time rule, but my guess is it was ‑‑ it fell within that time period, a period where there wasn't any statute of limitations as a federal matter. I mean, everybody was shocked when they came down with this EDPA thing. And then when the Supreme Court said, yeah, we think that's exactly what it says. But it's been around for quite some time now, 1996 for EDPA and Chavez. Yeah, it has been, but I was ‑‑ it came after I came on this court. Let me just tell you that. It wasn't there when I first came on. It was a shocker. It was a shocker among judges all over the country. So I just point that out as a matter of history. And I don't disagree on this latest. But isn't Holbrook in a different situation from the Scarborough analysis? Because he's not asking for ‑‑ he is only asking for the portion of the time during which the appeal could have been filed, as opposed to the four‑year California deal for reasonableness, which I think we all agree is a very different animal. Why isn't that distinction, along with the holding in Gonzales, dispositive of creating a rule that can actually be applied? Well, this rule can be applied quite easily, just like Quatrain followed Scarborough. I mean, Scarborough is talking about a 21‑day period. Here we're talking about a 56‑day period. And he had 56 days within which he could have done something, and he didn't do it. The problem is where you are, how you resolve the rule under your analysis depends on recognizing that something is pending under the definition of pending until the time expires. And if you file, then you're safe. And if you don't file, then it's retroactive. And you have to go back and say, all right, well, now we're going to say it ended way back here. Don't you see a problem with petitioners being concerned about filing on the deadline or near the deadline time? Because just the act of having done that may now make them lose on the AEDPA analysis. So won't that discourage people from completing collateral review and formulating the case to a complete resolution, which is what we would all want? Don't we want to encourage that? I don't see the problem at all, Your Honor. I mean, here we have a petitioner who had 56 days from when the Michigan Court of Appeals issued its ruling denying him relief. The Michigan court rule said he had 56 days to file an application for relief with the Michigan Supreme Court. And 56 days is a pretty long period of time. It's not 21 days like in Scarborough. And he had 56 days, and he didn't do anything within those 56 days. He sat on his hands. Now, if he had filed it on the 55th day, yes, it would have been timely, and he would have got the benefit of that time. But the burden is on him to act expeditious in a timely manner. This was a longer period of time. Why doesn't Gonzales' analysis say that you have pending includes any time for seeking relief even if no appeal is filed? Why doesn't that undercut your argument? Wasn't Gonzales a direct appeal and not a collateral appeal? Well, Scarborough says they're totally different. Separate statutes, separate analysis. Well, they do under a doctrine analysis that your opposing counsel says is inapposite and unnecessary to Scarborough's decision. And that was my point. If he disagrees with Scarborough, you know, he's stuck with it. No, he's saying that he agrees with Scarborough's analysis but not the portion of the analysis that seeks to determine that the statute intentionally made a distinction between collateral and direct review. Well, the wording of the two statutes is different, and Scarborough is a published case and has construed the statutes. I think it's binding on the panel because unless, you know, a panel on Bonk overrules it, that's the rule now in the Sixth Circuit. Okay. Wait a minute. Let me just go back for a minute. Sure. Scarborough is the rule in the Sixth Circuit? Scarborough, yes. Published case just came out, you know, a few months ago. But maybe I'm getting confused again. It is the motion to reconsider case, isn't it? Yes, it is. Okay. But they construed the statute, the two statutes. They said the direct appeal statute is worded differently than the collateral appeal statute, and you can't get the benefit of time when you sit on your hands and don't file a timely appeal. Then how does the resuscitation language work that you can file and resuscitate? If it's within the appropriate time, that is correct. You have 56 days to do something. If you do it within 56 days, you're all set. If you file on the 57th day, the clerk rejects it, and you don't get any of those days because you didn't act in a timely manner. And that goes back to Chavez saying provided that it's filed in a timely manner, you get the benefit of those days. I would like to briefly address the equitable tolling argument. I have several arguments. First, I believe it's outside the scope of the certificate of appealability. If you read the order granting a certificate of appealability, the court basically says, well, there's a 2001 unpublished case that says he might get statutory tolling. There's a 2012 unpublished case that says he wouldn't get statutory tolling. Therefore, we're going to grant a certificate of appealability. No mention or discussion of equitable tolling at all in the order granting a certificate of appealability. Further, in the district court, Holbrook did not argue anything saying I'm entitled to equitable tolling. He didn't say I knew about this unpublished case from 2001. If you read his response, he basically, because my motion for summary judgment says, Judge, please grant summary judgment, but if you think I'm wrong, please give me 60 more days to file an answer. His entire answer is basically, why should the state get 60 more days? They should have filed their answer now. He didn't say I'm entitled to equitable tolling. Now, counsel came up with an argument as to why he should get equitable tolling, but Hall v. Warden, a case I mentioned in my 28J letter, specifically says that the Sixth Circuit's function is to review the case that was presented to the district court rather than the better case fashioned after a district court's unfavorable order. And there just was no argument in the district court as to why equitable tolling should apply. So I ask this court to follow the logic or the holding in Hall v. Warden and also find that equitable tolling is outside the scope of the certificate of appealability. And if there are any other questions, if not, I'll sit. All right. Thank you very much. I ask that you affirm the district court. Thank you. Would you reiterate your analysis of Scarborough as to why it, as a published opinion, is not binding on the resolution of the statute? Sure. That's absolutely. Scarborough was not wrongly decided. We are not arguing Scarborough was wrongly decided. You do not get tolling for the period for seeking or for filing a motion for reconsideration if you don't actually file the motion. The necessary reasoning to that conclusion was that a motion for reconsideration resuscitates the underlying postconviction motion. That means that the underlying postconviction motion was dead or final by the time. That's just not the case for the period for filing an application for leave to appeal. Yes, we disagree with aspects of the opinion in Scarborough, but that the expression in this argument, for example, is just not necessary to the holding. It's arguably dicta. And so this court would not need to overrule Scarborough. We're just asking the court to draw the very same distinction that the Third Circuit has drawn. Does the quatrain make a difference? The quatrain makes no difference. First of all, it's obviously unpublished and not binding on this panel. And second, it's not even persuasive. And that's because the petitioner in that case was pro se. The state, as it did here, filed a 28-J letter calling the court's attention to Scarborough. The court had no response from the pro se petitioner on the Scarborough issue. And the court's analysis, frankly, reflects that fact, that there was no adversarial presentation on the question. It doesn't take account of any possible distinctions between the two. I think if you had an adversarial presentation, it would have been a different case, and it would have at least had to grapple with these kinds of counterarguments. And I also just want to be clear, one last point about Scarborough, that this court would definitely be creating a circuit split if it ruled for the state in this case. My friend pointed to two cases that Scarborough cited. Those were cases from the Second and Seventh Circuits. If you look at those cases, it's at page 1097 of the Scarborough opinion. They both had to do with motions for reconsideration. They were not about the period at issue in this case, which is the period for filing an application for leave to appeal. Turning to Chavez, I mean, we've already discussed that. He quoted from the opinion in Chavez, each time the court says the provided that phrase, provided that there is a timely filing of an application for leave to appeal, the court is referring expressly to the period between the lower court's adverse decision and, again, the filing. So the question is, when do you get tolling right up until the time of the filing? And the answer is, provided that it's timely. But that says nothing about whether you're entitled to some portion of the period when you file an untimely application for leave to appeal. And then I think Judge Stranch's question, my opponent doesn't take issue with the fact that on the state's reading and on the district court's reading of the statute, you would have tolling and the running of the statute of limitations turn on ex post contingencies. And that's just a bizarre way for, that's just not the way that statutes of limitations and tolling provisions are supposed to work, and it's not the way this tolling provision works. Quickly, on equitable tolling, my opponent's wrong. At record entry 20, page ID 1825, my client said he should not be denied equitable tolling. That's the response to the state's summary judgment motion. The district court addressed equitable tolling at length, and this court's COA says, Holbrook's application for a certificate of appealability is granted for claims 1 through 14, and his motion to proceed in form of paupers is granted. There's no limitation at all to the statutory tolling issue. And, in fact, in the case my opponent cites, Hall, the contrast is very stark. The certificate of appealability there was expressly limited to the question whether he was entitled to equitable tolling for having been denied access to a state transcript during the state process. So it's clearly within the scope of the certificate of appealability here, and we'd ask that you reverse. Thank you very much. Mr. Shapiro, I see you were appointed under the Criminal Justice Act, and we know you do that as a service to the court, so we'd like to thank you for taking that assignment. And the case is submitted. We may call the next case.